[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by the plaintiff's, Marcia Maythem's, complaint, dated October 15, 1992, and which was CT Page 6004 served on the defendants, Robert L. Winer and Carole A. Winer, doing business as Country Loft Antiques, on October 16, 1992. The defendants filed an answer and special defense, dated August 19, 1993. On November 3, 1993, the plaintiff filed a reply to the defendants' special defense, and on May 13, 1994, an amended reply to the defendant's special defenses. The latter pleading was ordered by the court. This matter was originally commenced by a complaint, dated March 26, 1991. That complaint was dismissed on June 26, 1992, for the plaintiff's failure to prosecute. On August 4, 1992, this court (Langenbach, J.) denied a Motion to Reopen the aforesaid judgment of dismissal, which resulted in the present action being commenced
The plaintiff met the defendant, Carole A. Winer, in October 1987, when she went to the Country Loft Antique Shop in Woodbury, Connecticut. She informed the defendant, Mrs. Winer, that she had purchased a farmhouse in Stowe, Vermont, and that she was going to furnish it with "country look antiques, informal and casual." This home was purchased by the plaintiff on September 7, 1987. She stated she was going to renovate it, complete unfinished rooms on the upper floor and construct an addition onto it. Mrs. Maythem testified that she originally planned on spending between $75,000.00 and $150,000.00 for these renovations, repairs and addition. Frits Momsen, the plaintiff's contractor, testified he made all of the renovations and repairs, and they cost the plaintiff approximately $336,000.00. At the time, the plaintiff lived in New Milford, Connecticut. However, her intent was to make her primary residence in the Stowe, Vermont home. In June 1988, the plaintiff sold her home in New Milford, Connecticut. The plaintiff testified that she knew little about antiques and that up to October 1987, she had only owned three antique pieces and that she made this fact known to the defendant, Mrs. Winer. She also stated that she told Mrs. Winer that she had problems envisioning spacial dimensions and for that reason, she must have the right to return items that were not spacially appropriate for the Vermont home. The plaintiff alleges that the defendant, Mrs. Winer, agreed to this condition. Mrs. Winer denies this and stated that the plaintiff was bound by the fourteen day return policy stated on her invoices (Exhibit R). Under this policy, items could only be returned for credit. Mrs. Winer did state that she did not feel the fourteen days began to run until the plaintiff actually lived in the Vermont home. Mrs. Winer also stated that she did allow the plaintiff to exchange one chaise lounge for another and also, she allowed the plaintiff to return CT Page 6005 one or two items she had purchased. This was due to the fact that the plaintiff had spent such a substantial sum of money in purchasing antiques from the defendant. In all, the plaintiff purchased items from the defendants for $128,978.00 (See Exhibits V1 — V6, H, LL, MM, W, X1, HH). The plaintiff testified that the defendants agreed to store her purchases in their shop until the plaintiff's Vermont home was finished. The plaintiff commenced purchasing antiques and/or items of furniture and fabrics from the defendant in approximately November 1987, and continued to do so until late December 1988. Plaintiff's Exhibit Z was compiled by the plaintiff's daughter with the plaintiff's help, and lists all of the items the plaintiff purchased from the defendants. These items total $124,068.33 (Note this figure differs from the total of all the checks which the plaintiff paid the defendant which totalled $128,978.00 as stated hereinbefore). In April 1988, Mrs. Maythem and Mrs. Winer visited the plaintiff's Vermont home so that the latter could see it. At that time, Mrs. Winer was also given the dimensions of each room in said house by Frits Momsen. Mrs. Winer also visited the Vermont property on September 5, 1988, to deliver some rugs the plaintiff had purchased, take measurements and talk to Mr. Momsen.
In the fall of 1988, as the home renovations and repairs neared completion, the plaintiff found that certain items were inappropriate size-wise for the locations within the house for which they were purchased. In mid November 1988, the plaintiff testified she knew which items she wanted to return to the defendant. According to the plaintiff, Mrs. Winer asked her to keep the items a little longer and try to place them in a different location in the house. During this time, there were telephone conversations going on between the parties concerning this problem. Mrs. Maythem testified that she became upset in December 1988, when Mrs. Winer was supposed to go to Vermont and meet with her. She said Mrs. Winer cancelled the trip and asked her not to return any items until she (Mrs. Winer) travelled to Vermont. Mrs. Maythem was hoping to occupy the Vermont home by Christmas 1988. However, it was not clear if that occurred. In any event, Mrs. Maythem was in said home in early 1989.
In August 1988, the defendants received a large container of items from France and as a result, they no longer had sufficient space to store the items Mrs. Maythem had purchased. Therefore, the defendants shipped the items purchased by the plaintiff to that date to her in Vermont on August 25, 1988 CT Page 6006 (Exhibit P).
Mrs. Winer testified that the plaintiff told her she was interested in French Country looking antiques. She also testified that Mrs. Maythem never inquired if she could return items she did not like. She further testified that the plaintiff never told her she was inexperienced relative to antiques and had no knowledge of them. However, Mrs. Winer did state that she felt Mrs. Maythem was relying on her for advice on antiques. Mrs. Winer stated that the only complaints she ever received from the plaintiff concerned a chaise lounge, kitchen cabinet, priest's chest and dining room cushions.
On January 25, 1989, Mrs. Maythem returned various items she previously purchased to the defendants. These items are listed on Exhibit DD and for which the plaintiff paid the defendants the sum of $41,177.80. Mrs. Maythem also sent a letter (Exhibit DD) to Mrs. Winer, dated January 26, 1989, which she (Mrs. Maythem) testified she received two hours after the arrival of the shipment of the aforesaid returned items. Mrs. Winer stated she considered the plaintiff to be the owner of the returned items. She sent the plaintiff a letter to that effect on February 7, 1989 (Exhibit FF). of the items returned by the plaintiff, the defendant resold some of them for a total price of approximately $24,765.00 (Exhibit TT).
The plaintiff's daughter, Margo Muttilainen, testified that she was with her mother on October 30, 1988, at Country Loft Antiques, and she heard Mrs. Winer say to her mother that there was no problem with returning any antiques that were sent to Vermont. Carol Enright, a friend of the plaintiff's, testified that she was with the plaintiff at Country Loft Antiques on December 11, 1988, and that the plaintiff told Mrs. Winer that some of the items were too large, and Mrs. Winer stated to Mrs. Maythem she should live with them for a while.
Mrs. Winer testified that the plaintiff owes the defendant the sum of $27,600.00 for curtains, fabrics, hardware and other items which she ordered specially and for which she has not paid. In the plaintiff's letter of January 26, 1989 (Exhibit DD) to Mrs. Winer, she asks her to ship these items to her in Vermont and she stated that she would make plans to have these items installed by someone else. In Mrs. Winer's letter of February 7, 1989 to Mrs. Maythem, she makes reference to these items, and states that before she ships them, she wants some CT Page 6007 assurances of payment (Exhibit FF). In that letter, she makes reference to a balance of $26,035.00 being due for these items.
On November 7, 1987, the plaintiff purchased a set of seven (7) chairs, including one (1) arm chair from Country Loft Antiques for $8,800.00 (Exhibit E). On the invoice for these chairs, they are listed as "E 1800's/English." There was testimony that E 1800's means early eighteen hundreds. These chairs were brought to court during the trial. It was then that the plaintiff for the first time made a claim that these chairs were not what they were represented to be by Mrs. Winer. There was substantial testimony concerning these chairs which were made Exhibits KK1 to 7. The court had ample opportunity to view them. Mrs. Maythem, Mrs. Winer, Mr. Momsen and Bernard McManus all testified relative to these chairs. The plaintiff called Mr. McManus to testify as an expert in the field of antiques. He testified that he has been in the antique business for the past twenty-six (26) years as a buyer, seller, and appraiser. He was an antique dealer between 1970 and 1992. Now, due to constraints on his time, he only works as a dealer by appointment. Now, most of his time is spent as an appraiser of antiques. He testified he does 200 appraisals for insurance purposes each year plus appraisals for Probate and Internal Revenue Service purposes. He testified there are various definitions of what is an antique. Three of these definitions are as follows:
 1. An item 100 years or older and which comes from another country;
 2. Items made before 1830, the date that the industrial revolution is believed to have commenced;
3. Items 100 years or older.
However, Mr. McManus' own definition of an antique is an item that has aesthetic value and is no longer in production. On a question from the court that by that definition a ten (10) year old item could be considered an antique, Mr. McManus answered in the affirmative. He testified the value of an item (antique) is determined by how old it is and if major renovations have been made to it. He testified 10 to 15% restoration of an item is acceptable. Any more than that and the item begins to lose value. When questioned about this 10 to 15% restoration rule, he stated it could not be found in any book. CT Page 6008 defined "original set" as being made by one cabinet maker at one time and an "assembled set" as being made by one or more persons at different times. He testified that the seven chairs were neither an original set nor an assembled set. He said they were a poor attempt at a set. Mr. McManus testified that in his opinion, these seven chairs (Exhibits KK1-7) are only worth $2,000.00, and were possibly worth much less in 1988. It was obvious to the naked eye that these chairs were not exactly the same. Two of the side chairs were different from the remaining four side chairs, which were very similar. Also, it was obvious that there was a substantial amount of restoration work done on some of these chairs.
The complaint in this matter is in five counts, alleging Uniform Commercial Code violations, breach of contract, negligent misrepresentations, fraudulent misrepresentation and violation of Connecticut's Unfair Trade Practices Act (CUTPA). The defendants filed an answer and two special defenses that this action is barred by the statute of limitations.
The original suit was served on the defendants on March 30, 1991 (Marcia Maythem v. Robert L. Winer, et al, #101995, Waterbury Superior Court). That suit was dismissed by Judge Langenbach on June 26, 1992, as aforementioned. A motion to reopen the dismissal was denied on August 4, 1992. The present action was commenced when this complaint was served on the defendants on October 16, 1992. The plaintiff's attorney made reference to the statute for resurrecting claims within one year during oral arguments on this case just prior to trial on April 7, 1994. These remarks were made when he was addressing the defendants' special defenses of the statute of limitation. Connecticut General Statute § 52-592 (a) reads as follows:
 Accidental failure of suit; allowance of new action. (a) If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment CT Page 6009 for the plaintiff reversed, the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment.
However, nowhere in this complaint does the plaintiff mention the aforementioned statute. The issue now is does the lack of reference to the statute prohibit the court from considering it at this point. In Ross Realty Corp. v. Surkis, 163 Conn. 388,392 (1972), our Supreme Court stated:
 While it has been suggested that it might be desirable for the plaintiff to plead sufficient facts necessary to bring the matter within the purview of 52-592, either by anticipation in the complaint or in the reply to a defense of the Statute of Limitations in order that the defendant might, if he chose, plead to them, this court has never held this to be a requirement. Dillon v. Millot, 17 Conn. Sup. 1, 3. It has been and is the holding of this court that matters in avoidance of the Statute of Limitations need not be pleaded in the complaint but only in response to such a defense properly raised.
It is clear that the plaintiff was not required to plead the statute in her present complaint. The court ordered the plaintiff to amend her reply to the defendants' special defenses to cite Connecticut General Statute § 52-592 which she did. AllAmerican Pools, Inc. v. Plato, 20 Conn. App. 625. The court believes that the defendant's counsel was aware that the plaintiff was proceeding under the aforementioned statute because reference was made to it on April 7, 1994, as aforesaid. Thus, there could be no surprise to the defendants or unfair advantage gained by the plaintiff if the court considers the said statute when deciding the statute of limitation defense. Therefore, the defendants' special defense of the statute of limitations would refer back from the date of service of the prior suit (dismissed case #101995) which was on March 30, 1991.
There was testimony from Mrs. Winer that her husband, the defendant, Robert L. Winer, was deceased. This testimony was not controverted or objected to so that the court cannot enter CT Page 6010 a judgment against the defendant, Robert L. Winer, because he is deceased and his estate administrator or executor were not substituted as a party in this matter.
The next issue the court must decide is whether the proper defendant(s) were made parties to this action. During the trial, it came out on the cross examination of the plaintiff and in the testimony of Mrs. Winer that the owner of the business known as Country Loft Antiques is Design Alternatives, Inc., a Connecticut stock corporation formed on July 27, 1981 (Exhibit 8). This was the first time that the plaintiff learned this fact. The defendants in this matter are Robert L. Winer and Carole A. Winer dba Country Loft Antiques. Design Alternatives, Inc. is not a party to this action. Mrs. Winer testified that Country Loft Antiques was started as a business in 1984 and that Design Alternatives, Inc. owned the business since its inception. She testified the business was started in Washington, Connecticut, and moved to Woodbury, Connecticut the same year. According to a corporate Resolution and Minutes of a directors' and shareholders' meeting held on February 1, 1987, the defendant, Carole A. Winer, was a President, Director and Shareholder of Design Alternatives, Inc. and her husband, Robert L. Winer, was the Secretary, Treasurer, Director and Shareholder of said corporation (Exhibit 12). On October 19.[,] 1984, a trade name certificate was filed by the defendants, Robert L. Winer and Carole A. Winer, with the Woodbury Town Clerk's office that stated they were doing business under the assumed name of Country Loft Antiques at 88 Main St. North, Woodbury, CT 06798 (Exhibit PP). Then, on September 7, 1988, Design Alternatives, Inc. filed a trade name certificate with the Woodbury Town Clerk's office, stating that it was doing business under the assumed name of Country Loft Antiques at 88 Main Street North, Woodbury, Connecticut 06798. This certificate was signed by the defendant, Carols A. Winer, as President (Exhibit OO). Then, on May 6, 1993, Design Alternatives, Inc. — dba Country Loft Antiques filed another trade name certificate with the Woodbury Town Clerk, listing the same business address and signed by the defendant, Carole A. Winer, as President (Exhibit RR). Mrs. Winer testified when questioned by the court that her husband had to be listed as owner of Country Loft Antiques in September 1984, so that he could get a building permit from the Town relative to the business. The court did not understand what Mrs. Winer meant and she could not further explain it. She also testified that Design Alternatives, Inc. pays her $4,000.00 per month as rent under a written lease. Kevin Dumas, a CT Page 6011 certified public accountant, testified that he has been Design Alternatives, Inc.'s accountant since February 1, 1987. He stated that on February 1, 1987, Country Loft Antiques was started by the corporation. He also stated that Country Loft Antiques' tax returns are filed under Design Alternatives, Inc. Mr. Dumas stated that the corporate books were kept in his offices since 1987, and that they were updated quarterly or whenever a corporate meeting was held by Robert L. Winer. In reviewing the oral evidence and the exhibits entered into evidence at trial, the court could find nowhere where the name Design Alternatives, Inc. appeared, except in the Trade Name Certificates and corporate resolution. The plaintiff who paid a substantial sum of money for items purchased from Country Loft Antiques was never told to make out her payment checks to anyone other than Country Loft Antiques, Robert L. Winer or Carole A. Winer. Connecticut General Statute § 35-1 reads in part:
 Sec. 35-1 Fictitious trade names forbidden; certificates. Unfair trade practices. No person, except as hereinafter provided, shall conduct or transact business in this state, under any assumed name, or under any designation, name or style, corporate or otherwise, other than the real name or names of the person or persons conducting or transacting such business, unless there has been filed, in the office of the town clerk in the town in which such business is or is to be conducted or transacted, a certificate stating the name under which such business is or is to be conducted or transacted and the full name and post-office address of each person conducting or transacting such business or, in the case of a corporation using such an assumed name, its full name and principal post-office address. Such certificate shall be executed by all of such persons or, in the case of a corporation, by an authorized officer thereof, and acknowledged before some authority qualified to administer oaths. Failure to comply with the provisions of this section shall be deemed to be an unfair or deceptive trade practice under subsection (a) of section 42-110b.
The purpose of § 35-1 is to protect creditors by giving them constructive notice of the entity behind a trade name. MetroBulletins Corporation v. Louis Soboleski, 30 Conn. App. 493. CT Page 6012
The plaintiff claims $41,177.80 for the items she paid for and returned to Mrs. Winer, $8,800.00 she paid for the seven chairs which she wishes to return to the defendant, plus interest on that sum, $2,000.00, which she paid for a pine kitchen cabinet and which she returned to the defendant (Exhibit H), costs and punitive damages and attorney's fees for violation of CUTPA. The plaintiff seeks attorney's fees in the amount of $22,970.00.
After hearing the evidence, the court finds that the plaintiff sustained her burden of proof on Counts one and two and failed to sustain her burden of proof on Counts three and four. As to Count five, the court finds the issues for the plaintiff, only because of the fact that the defendants did not file a Trade Name Certificate in accordance with Connecticut General Statute § 35-1. As to the defendants' special defenses, the court finds that they did not sustain their burden of proof on any of them. Any judgment entered herein shall be against the defendant, Carole A. Winer, dba Country Loft Antiques, only, and not against the named defendant, Robert L. Winer, as he is deceased, and his estate was not substituted as a party in this matter.
The first count of the plaintiff's complaint alleges a violation of the Uniform Commercial Code. Connecticut General Statute § 42-a-2-201 (1) reads as follows:
 Sec. 42a-2-201. Formal requirements; statute of frauds. (1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
Subsection (3)(c) of said statute reads as follows:
 (3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other CT Page 6013 respects is enforceable (a) if or (c) with respect to goods for which payment has been made and accepted or which have been received and accepted as provided by section 42a-606.
Here the contract was for over $500.00, and was an oral contract. However, the defendants here accepted payments from the plaintiff which took the matter outside of the Statute of Frauds and made it an enforceable contract since it was accepted. Manheimer v. Matzdorff, 28 U.C.C. Reporter Service, 315; Wayside Furniture Shows v. Tagliatela, #CV91-0310660, Judicial District of New Haven at New Haven, Vertefeuille, J., April 26, 1993.
From the evidence, the court finds that the plaintiff and the defendants, acting through the defendant, Carole A. Winer, entered into an oral contract in the fall of 1987, whereby the defendant, Carole A. Winer, and Country Loft Antiques would advise the plaintiff on appropriate antiques and pieces of furniture for her home in Vermont. This court finds that this was one contract and not a series of contracts for each purchase and sale between the parties. The court further finds that as part of that contract, the parties agreed that if the plaintiff did not like a particular item purchased after it was placed in her home, she could return it back to the defendants for credit or cash, provided that the same was done within a reasonable period of time. The court finds that the fourteen day rule as listed on the defendants' invoices, whereby a purchaser could return an item back to the defendant within fourteen days for credit, did not apply to this case because that was not the intent of the parties. The court finds that all the items returned by the plaintiff to the defendants were returned within a reasonable period of time.
The court further finds that the plaintiff had constructive notice of the fact that Design Alternatives, Inc. owned Country Loft Antiques after September 7, 1988, when that corporation filed an appropriate Trade Name Certificate. For items purchased from Country Loft Antiques prior to that date, the proper defendants are Carole A. Winer and the Administrator or Executor of the Estate of Robert L. Winer. For items purchased from Country Loft Antiques after that date, the proper defendant is Design Alternatives, Inc.
The court orders that the defendant, Carole A. Winer, dba CT Page 6014 Country Loft Antiques, shall pay to the plaintiff the sum of $39,127.55 which represents the monies she paid for the items she returned to the defendants, ($41,177.80) including $2,000.00 for the pine kitchen cabinet, less $3,440.25, which she paid for the late nineteenth century brass bed (Exhibit T) and $610.00 she paid for the "Runner Carpets" (Exhibit R). These items were purchased on October 12, 1988, and September 29, 1988, respectively, and on those dates, the trade name certificate showing Design Alternatives, Inc. owned Country Loft Antiques was filed in the Woodbury Town Clerk's office (Exhibit OO), giving the plaintiff constructive notice of the fact that Design Alternatives, Inc. then owned Country Loft Antiques.
As to the six side chairs and one arm chair (Exhibits KK1-7), which the plaintiff purchased from the defendant on November 7, 1987, for $8,800.00 (Exhibit E), the court will not order the defendant, Mrs. Winer, to take said chairs back and refund the plaintiff her purchase price. These items were in the possession of the plaintiff from their date of delivery until the present trial. Over six years passed before the plaintiff sought to return them to the defendant. The first knowledge the defendant, Mrs. Winer, had that the plaintiff was not satisfied with them was on the date this trial commenced on April 12, 1994. It appeared to the court that all of the defects which led Mr. McManus to conclude that these chairs were not what they were represented to be were visible on the date of purchase. Also, as the court stated hereinbefore, the plaintiff did not prove either fraudulent or negligent misrepresentation.
As the court previously stated, it found that the defendants violated the provisions of CUTPA as a result of their failure to comply with Connecticut General Statute § 35-1 by not filing a Trade Name Certificate showing that Design Alternatives, Inc. owned Country Loft Antiques. Under Connecticut General Statute § 42-110g(a), the awarding of punitive damages is discretionary with the court for violations of Connecticut General Statute § 42-110b. Also, Connecticut General Statute § 42-110g(D) states that the court may award costs and reasonable attorney's fees based on the work reasonably performed by an attorney and not on the amount of recovery. The court awards no punitive damages in this matter, as it does not believe that the actions of the defendant, Carole A. Winer, were such that punitive damages are required in this case. The court awards the plaintiff attorney's fees in the amount of $11,000.00. Thus, the total judgment that the court orders is $50,127.55, CT Page 6015 and said judgment shall enter against the defendant, Carole A. Winer, dba Country Loft Antiques, only, for the reasons hereinbefore stated. The court also awards the usual costs to the plaintiff. The court does not award Bernard McManus any fee for his testimony because the plaintiff did not prevail on the issues relative to his testimony, namely the seven chairs (Exhibit KK1-KK7).
Judgment may enter accordingly.
WILLIAM J. SULLIVAN